Case No. 16-24131-Civ-COOKE/TORRES

KENNETH GOODE,

    Plaintiff,

v.

CELEBRITY CRUISES, INC. *et al*,

    Defendants,

v.

AKIRA ENTERTAINMENT, INC.,
a foreign corporation,

    Third-Party Defendant.

_____/

**ORDER ON POET'S MOTION TO STAY DISCOVERY, FOR ISSUANCE OF A PROTECTIVE ORDER, TO MODIFY THE SCHEDULING ORDER, AND TO SCHEDULE A STATUS CONFERENCE**

This matter is before the Court on Poet Holdings, Inc., Poet Theatricals Marine, LLC, and Poet Technical Services, LLC's (collectively, "Poet") motion for (1) a stay of discovery, (2) a protective order for non-party witnesses, (3) an extension of all pre-trial deadlines, and (4) a status conference. [D.E. 60]. Celebrity Cruises ("Celebrity") filed its response on July 28, 2017 [D.E. 61] and Plaintiff filed his response on August 3, 2017. [D.E. 64]. Poet timely replied on August 4, 2017. [D.E. 67]. Therefore, Poet's motion is now ripe for disposition. After careful

1

consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, Poet's motion is **GRANTED in part** and **DENIED in part**.

## I.  BACKGROUND

Kenneth Goode ("Plaintiff"), a Canadian citizen, filed this action on September 27, 2016. Plaintiff worked as a carpenter onboard a ship owned and operated by Celebrity and claims that he was directly paid by Akira Entertainment, Inc. ("Akira") in connection with the removal of theater and lighting equipment from the M/S Equinox.[1] The removal of the equipment was supposedly necessitated by the conclusion of a contractual relationship between Poet and Celebrity, whereby Poet produced various entertainment shows on five separate Celebrity-owned vessels, including the M/S Equinox.

Following the conclusion of the business relationship between Poet and Celebrity, Celebrity was contractually obligated to return all equipment, including set pieces, costumes, props, and flying motors to Poet. In order to return Poet's equipment and allow for the installation of new equipment, Celebrity contracted directly with Akira to provide the necessary labor for removal and/or installation of the equipment. Celebrity allegedly contracted with Akira for two separate reasons: (1) Celebrity lacked sufficient personnel with the requisite knowledge and experience to remove and/or install the equipment, and (2) Celebrity was unwilling to hire Poet to remove Poet's own equipment because Poet's rates were too expensive.

---

[1]  Plaintiff alleges that Akira functioned merely as a pay-roll employer and that either Celebrity and/or Poet were his actual and/or borrowed employer(s).

Thereafter, Akira hired Plaintiff, in addition to other individuals, as a carpenter and to serve as a member of its workforce upon the M/S Equinox. Plaintiff had previously and continuously worked for several weeks removing equipment onboard two of Celebrity's other ships, the M/S Solstice and the M/S Eclipse. Plaintiff was also scheduled to work on two additional Celebrity ships, the M/S Silhouette and the M/S Reflection. In other words, Plaintiff's initial contract was to work on five vessels in Celebrity's fleet.

On November 10, 2015, Plaintiff was working on the tension grid located in the theater of the M/S Equinox.[2] While performing the required work, Plaintiff fell through an opening in the tension grid when another Akira employee removed one of the grid posts. Plaintiff purportedly suffered serious physical injuries as a result of the fall. Plaintiff fell approximately 25 to 30 feet to the theatre floor sustaining broken wrists, broken ankles, multiple fractures in his back and neck vertebrae, and other significant trauma. Following the incident and the transport of Plaintiff off the M/S Equinox, Plaintiff performed no further work for Akira in connection with the removal and/or installation of equipment on Celebrity owned vessels.

Soon after Plaintiff included Poet in its amended complaint [D.E. 21], Poet initiated the process of serving Akira with a third-party complaint. Pursuant to the Federal Rules of Civil Procedure, as well as the Hague Convention on the service of extrajudicial documents, Poet engaged the Ministry of Justice for British Columbia on May 5, 2017 to facilitate service of a third-party complaint on Akira via the

---

[2]  Plaintiff alleges that Celebrity and/or Poet employed Plaintiff to serve as a Jones Act Seaman or a seaman under general maritime law.

Vancouver Sherriff's Office. On June 1, 2017, the Vancouver Sheriff's Office explained to Poet that it had not yet attempted service on Akira. In an attempt to expedite service, Poet provided another address where Akira may be served and the Ministry of Justice confirmed receipt of the second address on June 8, 2017.

In June 2017, Celebrity sought to pursue discovery including numerous non-party depositions of former and/or current Akira employees located throughout the domestic United States, including the deposition of Plaintiff and the corporate depositions of both Celebrity and Poet. Poet responded with objections to Celebrity's requests and explained that it would not continue discovery until a final determination was made as to the service of the third-party complaint on Akira. Specifically, Poet stated to all parties that "[u]ntil such time that Akira is served and/or it can be confirmed that Akira cannot be located for service, Poet objects to the scheduling of any further depositions, inspections and/or further discovery." [D.E. 60]. On July 14, 2017, Poet emailed the Ministry of Justice and learned that the Vancouver Sherriff's Office had still not attempted service on Akira at either address.[3]

At the time of filing its motion to stay discovery, Poet states that, despite its best intentions to effectuate service on Akira, Poet has been unable to do so. Poet asserts that Akira's participation in this litigation is imperative because Akira was

---

[3] Poet notes that at the time the papers were forwarded for service, the Ministry of Justice indicated that service might take additional time due to volume of requests for service.

Plaintiff's *de facto* employer at the time of the incident in that Akira hired, paid, and supervised Plaintiff.

Poet also explains that neither Plaintiff nor Celebrity sought to name Akira as a party to the action and that it was left upon Poet to do so. And although Plaintiff has not named Akira as a defendant in his complaint, Poet believes that it is equally plausible that Plaintiff's actually employer was Akira. As such, in the absence of Akira, Poet claims that it is hindered in its ability to obtain relevant discovery and testimony to establish Plaintiff's Jones Act employer at the time of his injury. Poet suggests that continuing with discovery in Akira's absence is grossly inefficient and highly prejudicial because it will only serve to force the parties to engage in the recall of numerous witnesses and repetitive document discovery.

On September 5, 2017, Poet notified the undersigned that it has now served Akira and that Akira's answer to the complaint is due shortly. Accordingly, Poet seeks (1) a reasonable stay of discovery pending Akira's joinder, (2) a protective order with regard to the production of non-party witnesses for deposition whom are under the control of Poet, and (3) a reasonable extension of all deadlines. [D.E. 60].

## II. ANALYSIS

### A. *Motion to Stay Discovery and to Modify the Scheduling Order*

To prevail on a motion to stay discovery, Poet must demonstrate reasonableness and good cause. The Court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*,

520 U.S. 681, 706 (1997); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *Chrysler Int'l Corp. v. Chemaly*, 280 F.3d 1358, 1360 (11th Cir. 2002) ("At the outset, we stress the broad discretion district courts have in managing their cases."); *Johnson v. Bd. of Regents of Univ. of Georgia*, 263 F.3d 1234, 1269 (11th Cir. 2001) ("[W]e accord district courts broad discretion over the management of pre-trial activities, including discovery and scheduling."). Additionally, "[m]atters pertaining to discovery are committed to the sound discretion of the district court." *Patterson v. United States Postal Serv.*, 901 F.2d 927, 929 (11th Cir. 1990). "In evaluating whether the moving party has met its burden, a court 'must balance the harm produced by a delay in discovery against the possibility that the [dispositive] motion will be granted and entirely eliminate the need for such discovery.'" *Bocciolone v. Solowsky*, 2008 WL 2906719, at *2 (S.D. Fla. July 24, 2008) (emphasis added) (quoting *McCabe v. Foley*, 233 F.R.D. 683, 685 (M.D. Fla. 2006)).

As for Poet's motion to amend the Court's Scheduling Order, it "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4); *see also Mann v. Taser Int'l, Inc.,* 588 F.3d 1291, 1312 (11th Cir. 2009) (where motion to amend came long after scheduling order deadline, "Plaintiffs were required to show good cause under Federal Rule of Civil Procedure 16(b)."); *Southern Grouts & Mortars, Inc. v. 3M Co.,* 575 F.3d 1235, 1241 (11th Cir. 2009) ("A

6

plaintiff seeking leave to amend its complaint after the deadline designated in a scheduling order must demonstrate 'good cause' under Fed. R. Civ. P. 16(b).").

The "good cause" standard "precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa v. Airprint Systems, Inc.,* 133 F.3d 1417, 1418 (11th Cir. 1998) (citation and internal quotation marks omitted); *see also Romero v. Drummond Co.,* 552 F.3d 1303, 1319 (11th Cir. 2008) ("To establish good cause, the party seeking the extension must have been diligent."). This is a strictly enforced standard because otherwise courts would be unable to control their docket and litigation could be severely disrupted. *See, e.g., Rogers v. Hartford Life and Acc. Ins. Co.,* 2012 WL 2395194, *1 n. 3 (S.D. Ala. June 22, 2012) ("[A] scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril . . . Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.") (citation omitted).

In sum, Poet argues that a stay and a modification of the Scheduling Order is necessary because (1) Akira may be the actual employer of Plaintiff, (2) the Court has personal jurisdiction over Akira, (3) Akira is an indispensable party, and (4) a determination as to Akira's participation must be ascertained before substantive discovery can proceed.

7

Celebrity agrees that we should modify the Scheduling Order and extend the pre-trial deadlines.[4] Yet, Celebrity opposes Poet's motion to stay all discovery and Poet's request for a protective order. Celebrity contends that a motion to stay is completely unnecessary because the Court lacks personal jurisdiction over Akira. Celebrity explains that Poet is primarily responsible for the delay of this action because it continues to oscillate between (1) a position that any deposition discovery is inappropriate until Akira is brought into the case, and (2) a position that indicates that discovery may proceed, but that Poet's lead counsel is unavailable. For example, since Poet joined this case, Celebrity suggests that only one deposition has taken place. As such, Celebrity believes that the parties are woefully behind any workable schedule to comply with the Court's current Scheduling Order.

Celebrity's primary argument as to why Poet's motion for a stay should be denied is because the Court lacks personal jurisdiction over Akira. In Poet's third-party complaint, Poet alleges that "Akira personally or through an agent engaged in substantial business activity in the State of Florida, specifically Miami-Dade County, and performed services in connection with the operation of cruise ships in the waters of the state of Florida." [D.E. 40-1]. Because Poet's jurisdictional allegations are purportedly insufficient, Celebrity suggests that the Court lacks personal jurisdiction over Akira.

---

[4]  Plaintiff filed a two-page response [D.E. 64] to Poet's motion, indicating that Plaintiff does not oppose Poet's motion for a stay of discovery on the condition that the Court extends the discovery and pre-trial deadlines by sixty days. If the Court declines to do so, then Plaintiff requests that the Court deny the motion to stay. Plaintiff also suggests that Akira is not an indispensable party to this case and that the Court does not have personal jurisdiction over a Canadian corporation.

A federal court must have personal jurisdiction over a third-party defendant before it may adjudicate a third-party claim. Jurisdiction comports with due process when it is consistent with the Constitution and laws of the United States. "Considerations of due process require that a non-resident defendant have certain minimum contacts[5] with the forum, so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000) (citing *International Shoe v. Washington,* 326 U.S. 310, 316 (1945); *Borg–Warner Acceptance Corp. v. Lovett & Tharpe, Inc.,* 786 F.2d 1055, 1057 (11th Cir. 1996)). However, the nature and quality of these contacts ordinarily "vary depending upon whether the type of personal jurisdiction being asserted is specific or general." *Consol. Dev. Corp.*, 216 F.3d at 1291.

Generally speaking, "[s]pecific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint." *Consol. Dev. Corp.*, 216 F.3d at 1291 (citing *Madara v. Hall,* 916 F.2d 1510, 1516 n.7 (11th Cir. 1990), *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 nn.8-9 (1984)). The amount of minimum contacts required to support specific jurisdiction occurs when a defendant "purposefully avails itself of the privilege of

---

[5] The reason for minimum contacts is because it ensures fairness and the expectation that "the defendant's conduct and connection with the forum State [is] such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

9

conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958).

On the other hand, general personal jurisdiction "arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated." *Consol. Dev. Corp.*, 216 F.3d at 1292. "The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state." *Id.* (citing *Borg–Warner,* 786 F.2d at 1057; *Hall,* 466 U.S. at 412–13). General personal jurisdiction occurs in "instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit . . . on causes of action arising from dealings entirely distinct from those activities." *International Shoe,* 326 U.S. at 318. The Supreme Court has established that general jurisdiction over corporations is mostly limited to either the place of incorporation or its principal place of business.[6] *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) ("Those [two] affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable.").

---

[6] The Supreme Court has not held that *only* a corporation's place of incorporation or its principal place of business may suffice for general jurisdiction. But, the Court has indicated that those two places are the two most common ways of establishing general jurisdiction. *See Daimler AG*, 134 S. Ct. at 760 ("*Goodyear* did not hold that a corporation may be subject to general jurisdiction *only* in a forum where it is incorporated or has its principal place of business; it simply typed those places paradigm all-purpose forums.").

All parties agree that general maritime law governs this case. "As such, the personal jurisdiction analysis includes a twist not present in diversity cases, although ultimately there is no practical difference in the way in which the Court proceeds towards its determination." *Zeus Projects Ltd. v. Perez y Cia. de Puerto Rico, Inc.*, 187 F.R.D. 23, 28 (D.P.R. 1999). In determining the personal jurisdiction of a party in an admiralty case, "due process only requires sufficient contacts within the United States as a whole" and "the limits on a state's power over non-resident defendants do not apply to a federal court sitting in admiralty in that state." *Trans–Asiatic Oil Ltd. S.A. v. Apex Oil Co.,* 743 F.2d 956, 959 (1st Cir. 1984). This means that in admiralty cases, while "the law of the forum state ordinarily governs the issue of personal jurisdiction," it may also be established under Federal Rule of Civil Procedure 4(k)(2). *United Trading Co. v. M.V. Sakura Reefer*, 1996 WL 374154, at *3 (S.D.N.Y. July 2, 1996) (citing *Klinghoffer v. S.N.C. Achille Lauro,* 937 F.2d 44, 50 (2d Cir. 1991)); *see also World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 723 (5th Cir. 1996) ("[W]e conclude that federal law includes admiralty cases for the purposes of Rule 4(k)(2).").

To determine if there is personal jurisdiction over Akira, "a federal court must [first] look to the long-arm statute of the state where it sits and the cases that interpret that statute." *Johns v. Taramita,* 132 F.Supp.2d 1021, 1027 (S.D. Fla. 2001) (citing *Associated Transport Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.,* 197 F.3d 1070, 1072–74 (11th Cir. 1999) (applying Florida long-arm statute to determine whether personal jurisdiction exists over defendant to suit in

11

admiralty); *Shaffer v. Tiffany Yachts, Inc.,* 1996 WL 870734, *2 (S.D. Fla. Oct.31, 1996) (same)). In this case, the relevant long-arm statute is Florida. That means that Akira "can be subject to personal jurisdiction under Florida's long-arm statute in two ways: first, section 48.193(1)(a) lists acts that subject a defendant to specific personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida, Fla. Stat. § 48.193(1)(a); and second, section 48.193(2) provides that Florida courts may exercise general personal jurisdiction— that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida-if the defendant engages in 'substantial and not isolated activity' in Florida, *id.* § 48.193(2)." *Tarasewicz v. Royal Caribbean Cruises Ltd.*, 2015 WL 3970546, at *19 (S.D. Fla. June 30, 2015) (quoting *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015)).

The allegations in Poet's third party complaint do not rise to the level of specific jurisdiction under Florida's long-arm statute.[7] And general jurisdiction is doubtful under Florida's long-arm statute because it must be demonstrated that Akira's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). The two most common ways of establishing

---

[7] As stated earlier, Poet merely alleges that "Akira personally or through an agent engaged in substantial business activity in the State of Florida, specifically Miami-Dade County, and performed services in connection with the operation of cruise ships in the waters of the state of Florida." [D.E. 40-1]. These allegations have no specific relationship to the cause of action being pursued – meaning that the complaint does not allege specific jurisdiction.

12

general jurisdiction are a corporation's principal place of business and headquarters. *See id.* Yet, both of those locations, as they relate to Akira, are located in Canada and there is nothing in the record to support the conclusion that Akira is essentially at home in Florida.[8] Accordingly, the most likely basis for personal jurisdiction over Akira is under Rule 4(k)(2) (i.e. the national long-arm statute). *See Daimler AG*, 134 S. Ct. at 760.

"Rule 4(k)(2) was adopted to provide a forum of federal claims in situations where a foreign defendant lacks substantial contacts with any single state but has sufficient contacts with the United States as a whole to satisfy due process standards and justify the application of federal law." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1293–94 (Fed. Cir. 2012); *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1216 (11th Cir. 2009) ("[I]n cases where a defendant is not subject to jurisdiction in any state's courts of general jurisdiction, authorizes a district court to aggregate a foreign defendant's nationwide contacts to allow for service of process") (citation and quotation marks omitted); *Associated Transp. Line, Inc.*, 197 F.3d at 1074 ("This rule permits the exercise of personal jurisdiction over foreign defendants for claims arising under federal law when the defendant has sufficient contacts with the nation as a whole, but is without sufficient contacts to satisfy the long-arm statute of any particular state.") (citing *United States S.E.C. v. Carrillo*, 115 F.3d 1540, 1543–44 (11th Cir. 1997)).

---

[8] Poet merely suggests that Akira operates in Ft. Lauderdale.

The rule is neither applicable nor relevant until a court finds that a defendant is not subject to personal jurisdiction in the courts of any state. *See Merial Ltd.*, 681 F.3d at 1294 ("[O]ne precondition for applying Rule 4(k)(2) is that the defendant must not be subject to personal jurisdiction in the courts of any state (sometimes called the 'negation requirement'") (citation omitted); *see also Henriquez v. El Pais Q'Hubocali.com*, 500 F. App'x 824, 829 (11th Cir. 2012) ("Under Rule 4(k)(2), when a defendant is not subject to the jurisdiction of any one state, a court may aggregate a foreign defendant's nationwide contacts.") (internal quotation marks and citation omitted). Once it becomes clear that there is no specific or general jurisdiction under Florida's long-arm statute, the analysis on whether there is personal jurisdiction under Rule 4(k)(2) will turn on whether there are sufficient minimum contacts with the United States as a whole.

Given the record presented, we cannot make a determination on whether we have personal jurisdiction over Akira. While it is certainly possible that personal jurisdiction exists, the parties must supplement the record before a finding on jurisdiction can be made.[9] For example, if the Court must determine whether personal jurisdiction exists under Rule 4(k)(2), the record must be clear on Akira's contacts with the United States as a whole. Until that time, Celebrity's arguments – that there is no personal jurisdiction over Akira – are premature.

---

[9] Celebrity's second argument, that Akira is a permissive party, is now moot because – as of September 5, 2017 – Akira has been served with Poet's third party complaint. As such, the distinction on whether Celebrity is either a permissive or indispensable party is no longer significant.

Because we cannot determine at this time whether there is personal jurisdiction over Akira, we turn back to Poet's motion to stay discovery. It is now clear that Akira was served in September 2017, which was the primary reason as to why Poet did not want to proceed with any discovery in this case. Accordingly, we find that there is no persuasive reason to halt these proceedings and that Poet's motion for a stay of discovery must be **DENIED**.

As for Poet's motion to extend all of the pre-trial deadlines in the Court's Scheduling Order, all parties (except Akira) have indicated that completing fact discovery by November 17, 2017 will be a burdensome task. The reason for the lack of progress stems back to Poet believing that discovery could not proceed until Akira became a party in this case. Now that Akira has been served, a sixty-day extension of all the Court's pretrial deadlines should provide the parties enough time to conduct all necessary discovery. As such, Poet's motion is **GRANTED** and the Court's pre-trial deadlines are hereby extended for sixty additional days.

### B.  *<u>Motion for Protective Order</u>*

The next issue is Poet's motion for a protective order. "Rule 26(c) allows the issuance of a protective order if 'good cause' is shown. In addition to requiring good cause, this circuit has also required the district court to balance the interests of those requesting the order. A 'district court must articulate its reasons for granting a protective order sufficient for appellate review.'" *McCarthy v. Barnett Bank of Polk Cty.*, 876 F.2d 89, 91 (11th Cir. 1989) (citations omitted); *see also Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429–30 (M.D. Fla. 2005) ("Rule

26(c) provides that upon a showing of good cause, a court 'may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.' The party seeking a protective order has the burden to demonstrate good cause, and must make 'a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements' supporting the need for a protective order.") (citations omitted).

At the time Poet filed its motion, Poet argued that a protective order was needed because Celebrity indicated that it would issue a subpoena for three non-party former Poet employees. Yet, Poet asserted that all discovery, including depositions, should not proceed until Akira was served in this case. Because Akira was served in September 2017, there is no reason to delay these depositions any further. As such, Poet's motion for a protective order is **DENIED as moot**.

### III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Poet's motion is **GRANTED in part** and **DENIED in part**. [D.E. 60].

A. Poet's motion for a stay of discovery is **DENIED**.

B. Poet's motion for a sixty-day extension of the Court's pre-trial deadlines is **GRANTED**.

C. Poet's motion for a status conference and a protective order are **DENIED as moot**.

16

**DONE AND ORDERED** in Chambers at Miami, Florida, this 29th day of September, 2017.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge